```
         IN THE UNITED STATES DISTRICT COURT FOR THE
                  SOUTHERN DISTRICT OF GEORGIA
                       STATESBORO DIVISION
```

| | |
|---|---|
| JERMARAE HERBERT, | * |
| Plaintiff, | * |
| v. | *   CV 619-052 |
| DA'SHAUN MILLER, | * |
| Defendant. | * |

### O R D E R

Before the Court is Defendant's motion for summary judgment. (Doc. 35.) For the reasons that follow, Defendant's motion is **DENIED**.

### I. BACKGROUND

Plaintiff is a Georgia Department of Corrections inmate who, while in custody, was seriously injured by Defendant Da'Shaun Miller, a corrections officer at Georgia State Prison in Reidsville, Georgia. (Doc. 27, at 1.) As the result of what he claims was excessive force, Plaintiff brings this suit under the Eighth Amendment to the United States Constitution, 42 U.S.C. § 1983, and Georgia law. (Id. at 5-9.)

The facts are as follows.[1] After being incidentally stabbed at Phillips State Prison in February 2019, Plaintiff was transferred to Georgia State Prison on March 12, 2019. (Doc. 35-3, at 22-25; Doc. 27, ¶ 6.) Upon arrival, he was taken to the visitation area for intake, where he was checked in and enrolled into the prison. (Doc. 35-3, at 23.) During intake, Defendant stated he found a contraband cell phone on Plaintiff's person; so, Defendant decided to put Plaintiff into segregation. (Id.) This is where the dispute begins.

As Defendant and another corrections officer, Ms. Shemaury Mikell, escorted Plaintiff down the prison hallway to cell 24, Plaintiff noticed cell 25 was unoccupied. (Id. at 24-25.) "[B]eing that [Plaintiff] just got stabbed in [the] back at the last facility and [didn't] feel safe being in [a] cell with someone else," Plaintiff asked Defendant to place him in cell 25 by himself, instead of in cell 24 with a cellmate. (Id. at 25.) While Ms. Mikell was handcuffing another inmate in cell 24, Defendant responded that "this is not a Holiday Inn Express," declined Plaintiff's request, and began taunting Plaintiff – rubbing his arm and asking "you scared to get poked?" (Id. at

---

[1] The Court emphasizes that at this stage, it views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in his favor. (See infra at 5.) While Defendant's version of the facts may differ from Plaintiff's, the Court is required to credit Plaintiff's version of the facts for purposes of this Order. See Evans v. Stephens, 407 F.3d 1272, 1278 (11th Cir. 2005).

2

26-28.) Defendant disputes this took place, claiming Plaintiff "did not express concerns for his personal safety," . . . "did no[t] request to be placed in a different cell," . . . and never had any conversation with Defendant about that or anything else. (Doc. 35-4, ¶ 12.)

What happened next - Plaintiff's reaction to Defendant's taunts - is of critical importance, and the evidence conflicts. Plaintiff claims the taunting made him uncomfortable, so he "tried to pull away from Defendant." (Doc. 27, ¶¶ 11-12.) Later, Plaintiff characterized his action as "turn[ing] and look[ing] at [Defendant]" as a response to the taunt. (Doc. 46, at 28.) Plaintiff makes clear that by his motion, he "was not resisting a lawful command or otherwise committing a disciplinary infraction," "was restrained" by the handcuffs, was "helpless" to defend himself, and "did not try to pull away violently or aggressively and his motion did not create a security risk or other threat to anybody's safety or security." (Doc. 27, ¶¶ 12, 14, 17, 19.) Defendant disagrees, claiming Plaintiff "refused to enter the cell" and refused to follow Defendant's direct orders to stop pulling away. (Doc. 35-4, ¶ 8.) He claims Plaintiff "forcefully pulled away" from him and that Plaintiff's "lack of compliance posed a danger to [himself] and others in the area." (Id. ¶¶ 8, 10.)

3

In either case, "[n]ext thing [Plaintiff knew], [his] face was on the floor. Headfirst." (Doc. 46, at 28.) In response to Plaintiff's motion - either 'turning away' or 'pulling away' - Defendant had taken his own right leg around Plaintiff's left leg, and his hand around Plaintiff's bicep, and forced him to the floor - "with," according to Plaintiff, "an extra amount of strength." (Id.) Plaintiff "did not meaningfully fight back." (Doc. 27, ¶ 20.) "After [Plaintiff's] face hit the floor, several officers [were] called" who put leg irons on Plaintiff. (Doc. 46, at 29.) Plaintiff "felt a kick in the ribs and a kick in the shoulder, and next thing [he knew], [he] was being escorted to medical," where he received a medical examination and treatment. (Id. at 29-30.) The medical staff stitched Plaintiff's lip - which he claims had "a chunk hanging out" - pulled out Plaintiff's cosmetic gold teeth, put a band-aid on his nose, ordered x-rays, and sent him back to his cell. (Id. at 29.) Plaintiff later had surgery to repair his broken nose and numerous sick calls to repair his broken teeth. (Id. at 9-10.) Now, Plaintiff claims Defendant's actions constituted excessive force in violation of the Eighth Amendment and that Defendant committed the state law torts of assault and battery, so he brings this action. (Doc. 27.) Defendant, claiming he did not use excessive force and, in any case, is protected by qualified immunity and sovereign immunity, moves for summary

4

judgment on all counts. (Doc. 35.) The Court addresses the Parties' claims below.

## II. LEGAL STANDARD

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Facts are "material" if they could "affect the outcome of the suit under the governing [substantive] law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and a dispute is genuine "if the non[-]moving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." Waddell v. Valley Forge Dental Assocs., Inc., 276 F.3d 1275, 1279 (11th Cir. 2001). The Court must view factual disputes in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must "draw all justifiable inferences in [the non-moving party's] favor." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (citation, internal quotation marks, and internal punctuation omitted). The Court may not weigh the evidence or determine credibility. Anderson, 477 U.S. at 255.

The moving party has the initial burden of showing the Court the basis for its motion by reference to materials in the record. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the non-

movant bears the burden of proof at trial, as Plaintiff does here, the movant has two options as to how it can carry its initial burden. Id. at 1115-16. The movant may demonstrate an absence of evidence to support the nonmovant's case, or provide affirmative evidence demonstrating the nonmovant's inability to prove its case at trial. Id.

If the movant carries its initial burden, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." Id. The non-movant must tailor its response to the method by which the movant carries its initial burden. For example, if the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993). On the other hand, if the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1116-17. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th

6

Cir. 1981). Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56.

In this action, the Clerk of Court provided all parties notice of the motion for summary judgment, the right to file affidavits or other materials in opposition, and the consequences of default. (Doc. 36.) For that reason, the notice requirements of <u>Griffith v. Wainwright</u>, 772 F.2d 822, 825 (11th Cir. 1985), have been satisfied. The time for filing materials in opposition has expired, the issues have been thoroughly briefed, and the motion is now ripe for consideration.

### III. DISCUSSION

As an initial matter, Plaintiff has withdrawn his state law claims for assault and battery (Count II). (Doc. 39, at 14.) Plaintiff also notes he does not bring any federal official capacity claims. (<u>Id.</u> at 3.) Plaintiff's only remaining claim, therefore, is his claim for excessive force in violation of the Eighth Amendment under § 1983, brought against Defendant in his individual capacity. (<u>Id.</u> at 3-11.) Defendant claims he is entitled to qualified immunity and that he did not use excessive force in violation of Plaintiff's Eighth Amendment rights. (Doc. 35-2, at 6-11.) The Court will first address whether Plaintiff has established a constitutional violation for excessive force. Finding in the affirmative, the Court will then address whether Defendant is entitled to qualified immunity.

**A. Excessive Force**

"To prevail on a claim under § 1983, a plaintiff must demonstrate both (1) that the defendant deprived [him] of a right secured under the Constitution or federal law and (2) that such a deprivation occurred under color of state law." Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011) (internal citation and quotation omitted). The Eighth Amendment "forbids cruel and unusual punishments," and is applicable to the states through the Fourteenth Amendment. Id. (citing U.S. CONST. amend. VIII; Chandler v. Crosby, 379 F.3d 1278, 1288 n.20 (11th Cir. 2004)). "The Eighth Amendment's proscription of cruel and unusual punishments . . . governs prison officials' use of force against convicted inmates." Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999) (citation omitted).

"In Eighth Amendment excessive force cases, the 'core judicial inquiry' is 'not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Bowden v. Stokely, 576 F. App'x 951, 953 (11th Cir. 2014) (quoting Wilkins v. Gaddy, 559 U.S. 34, 37 (2010)). If the latter, then Plaintiff's Eighth Amendment rights were violated. Crocker v. Beatty, 995 F.3d 1232, 1248 (11th Cir. 2021) ("If [an officer applied force 'maliciously and sadistically,'] then there was excessive force. If not, then there

8

wasn't." (internal citation omitted)). To determine whether force was applied maliciously and sadistically, the Court must consider "a) the need for the application of force; b) the relationship between the need and the amount of force that was used; c) the extent of the injury inflicted upon the prisoner; d) the extent of the threat to the safety of staff and inmates; and e) any efforts made to temper the severity of a forceful response." Bowden, 576 F. App'x at 953 (quoting Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009), abrogated on other grounds by Crocker, 995 F.3d at 1248.) "When considering these factors, [the Court] give[s] a wide range of deference to prison officials acting to preserve discipline and security, including when considering decisions made at the scene of a disturbance." Fennell, 559 F.3d at 1217 (citation and quotation marks omitted). "Nonetheless, deference to correctional officers is not absolute and does not insulate from review actions taken in bad faith or for no legitimate purpose." Skelly v. Okaloosa Cnty. Bd. of Cnty. Comm'rs, 456 F. App'x 845, 848 (11th Cir. 2012) (citation omitted). The Court will address the five factors in turn.

1. The Need for the Application of Force

First, the Court considers the need for the application of force. Plaintiff argues "no amount of force was authorized." (Doc. 39, at 4.) While Plaintiff admits he "tried to pull away from Defendant" as a result of Defendant taunting him, he argues

9

there was no justification for any force because "the entirety of [such] justification" was Plaintiff 'pulling away' and 'turning to look' at Defendant. (Id.)  Plaintiff claims this falls short of "an act of aggression," making Defendant's conduct "objectively unreasonable." (Id. at 5.)  Defendant, however, claims that when Plaintiff "tried to pull away from [Defendant]," Plaintiff "may have pulled away from [Defendant's] grip on the handcuffs" – creating a security risk to himself and others. (Doc. 43, at 2-3.) Defendant thus claims he used reasonable, authorized, "controlled force in order to keep [Plaintiff] from flailing free." (Doc. 35-2, at 8.)  On summary judgment, the Court must view factual disputes in favor of Plaintiff and draw all reasonable inferences in his favor, while viewing "the facts as reasonably perceived by [Defendant] on the basis of the facts known to him at the time." Fennell, 559 F.3d at 1217 (citation omitted).

Here, a corrections officer viewing the facts in the light most favorable to Plaintiff could find the use of force was necessary.  Even under Plaintiff's version of events, Plaintiff was pulling away from Defendant while Defendant tried to escort him to his cell.  While Plaintiff avers he was never given any orders and was otherwise compliant, his admission that he 'tried to pull away' from Defendant invited a use of force by Defendant to maintain order.  See Bennett v. Parker, 898 F.2d 1530, 1533 (11th Cir. 1990) ("Prison guards may use force when necessary to

restore order and need not wait until disturbances reach dangerous proportions before responding."). Because force was reasonable, this factor weighs in favor of Defendant.

2. The Relationship Between Need and Amount of Force

Next, the Court considers the relationship between the need for force and the amount of force used. Plaintiff claims that while he "tried to pull away from Defendant," he "did not try to pull away violently or aggressively and his motion did not create a security risk or other threat to anybody's safety or security." (Doc. 27, ¶ 12.) Plaintiff later clarified he was turning to look at Defendant, not attempting to abscond. (Doc. 46, at 28.) Plaintiff alleges Defendant's attack was "violent," (Doc. 27, ¶ 13), and done with "no legitimate [penological] reason" but "purely out of rage and spite," (Id. ¶ 21). Plaintiff further alleges he "did nothing to justify this violent attack" and "was not resisting a lawful command or otherwise committing a disciplinary infraction that would justify Defendant['s] . . . use of force against him." (Id. ¶¶ 16, 19.) Defendant disagrees with Plaintiff's characterization of the facts, instead claiming Plaintiff "was consistently resisting direct orders." (Doc. 35-2, at 8.) At this stage, though, Defendant's counter assertion is of

11

no consequence; the Court credits Plaintiff's version of the facts where a dispute exists.[2]

Although Plaintiff was pulling away from Defendant, the Court finds the amount of force used disproportional to the need for force under these facts. Under Plaintiff's version of events, Defendant did not offer any verbal warning to Defendant before using violent force. (Doc. 27, ¶ 19; Doc. 46, at 28; Doc. 39, at 5.) Further, crediting Plaintiff and drawing reasonable inferences in his favor, Plaintiff was turning to face Defendant, not running down the hallway, attempting to escape, or otherwise outside of Defendant's immediate control; Defendant could have simply tugged on Plaintiff's handcuffs or otherwise restricted his movement while he led him into the cell. Cf. Miles v. Jackson, 757 F. App'x 828, 830 (11th Cir. 2018) (finding a takedown an appropriate, proportional amount of force when a prisoner "not only failed to comply with [a corrections officer's] order to go further into the jail cell, but also evaded [the officer's] attempt to get him to comply"). Here, on Plaintiff's facts, there was no order with which to comply and no true evasion of the same. A jury could reasonably find Defendant's use of force was far beyond

---

[2] While Defendant offers numerous witness statements to corroborate his claims, witness statements – unlike objective video evidence – are not the sort of evidence that forecloses a genuine dispute of material fact. Cf. Ash v. Landrum, 819 F. App'x 770, 773 (11th Cir. 2020) ("Where an accurate video recording completely and clearly contradicts a party's testimony, that testimony becomes incredible.") (internal citation, quotation, and alterations omitted).

the amount of force necessary to restore order, so this factor weighs in favor of Plaintiff.

### 3. The Extent of Plaintiff's Injuries

The extent of Plaintiff's injuries clearly weighs in his favor. As a result of Defendant's actions, Plaintiff suffered a broken nose, stitches in his lip, broken teeth, and a forehead injury. (Doc. 27, ¶ 15.) Plaintiff's nose required surgery and a "chunk" of his lip was hanging off. (Doc. 46, at 30.)

### 4. Extent of the Threat to the Safety of Staff and Inmates

Plaintiff explicitly avers "his motion did not create a security risk or other threat to anybody's safety or security." (Doc. 27, ¶ 12.) The Court is required to credit Plaintiff's version of the facts. Even while Plaintiff's statement about danger is conclusory (and the potential threat is viewed from the perspective of a corrections officer), the non-conclusory facts alleged show that Plaintiff, while handcuffed, turned to look at Defendant non-violently and non-aggressively; these facts demonstrate he posed no threat to the safety of staff or other inmates, even from the perspective of a corrections officer. Thus, this factor weighs in favor of Plaintiff.

### 5. Efforts Made to Temper the Severity of a Forceful Response

According to Plaintiff, Defendant attacked him as he turned around. (Doc. 27, ¶ 13; Doc. 46, at 28.) Defendant admits he made no mitigating efforts to reduce the force he used; rather,

13

Defendant asserts the amount of force exercised was "commensurate with the noncomplian[t] conduct it was intended to control." (Doc. 35-2, at 9.) Defendant claims the amount of force was "appropriate" based on his training as a corrections officer. (Id. at 8.) However, according to Plaintiff, Defendant made no effort to pursue non-violent means to control him, and no other mitigating actions before resorting to "violent" force. (Doc. 27, ¶¶ 27-30.) This factor weighs in favor of Plaintiff.[3]

Based on the above, the Court finds a jury question exists regarding whether Defendant used excessive force in violation of the Eighth Amendment. Accordingly, the Court must determine whether Defendant is entitled to qualified immunity.

**B. Qualified Immunity**

Qualified immunity is a judicially-created affirmative defense that "shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Crocker, 995 F.3d at 1239 (citations and quotations omitted). "The doctrine shields all but the plainly incompetent

---

[3] Plaintiff admits he received the medical care he needed immediately after the incident. (Doc. 46, at 29-30) (Cf. Danley v. Allen, 540 F.3d 1298, 1308 (11th Cir. 2008), *overruled on other grounds, as recognized in* Randall v. Scott, 610 F.3d 701, 709 (11th Cir. 2010) (finding an Eighth Amendment violation because corrections officers, after pepper spraying the plaintiff, "confin[ed him] in a small cell and [did] not permit[] him to do anything to decontaminate himself after he had calmed down," including receive medical treatment)). Here, Plaintiff's immediate treatment bolsters Defendant's case for tempering the severity of a forceful response.

or those who knowingly violate the law." Id. (citations and quotations omitted). "To receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Lumley v. City of Dade City, 327 F.3d 1186, 1194 (11th Cir. 2003) (citations and quotation omitted). If Defendant establishes he was acting within his discretionary authority, "the burden shifts to the plaintiff to demonstrate that qualified immunity is not appropriate." Gray ex rel. Alexander v. Bostic, 458 F.3d 1295, 1303 (11th Cir. 2006) (quoting Lumley, 327 F.3d at 1194).

Here, Defendant was clearly acting within the scope of his discretionary authority. To determine whether a government official was acting within the scope of his discretionary authority, courts consider whether the official "was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004) (citation omitted). Neither party contests that Defendant was on-duty as a corrections officer at all relevant times to this action, and the relevant events occurred while he was carrying out the essential job function of transporting Plaintiff to his cell. (Doc. 27, at ¶¶ 7-13; Doc. 35-2, at 11.) Thus, "the burden shifts to the plaintiff to demonstrate that

15

qualified immunity is not appropriate." Lumley, 327 F.3d at 1194 (citation omitted).

To meet this burden, Plaintiff "must allege facts establishing both (1) that [Defendant] violated a constitutional right and (2) that the relevant right was 'clearly established' at the time of the alleged misconduct." Crocker, 995 F.3d at 1240 (citing Jacoby v. Baldwin Cnty., 835 F.3d 1338, 1344 (11th Cir. 2016)). "The first [prong] asks whether the facts, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a federal right." Tolan v. Cotton, 572 U.S. 650, 655-56 (2014) (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001) (alterations and quotations omitted)). "The second prong . . . asks whether the right in question was 'clearly established' at the time of the violation." Id. at 656 (citing Hope v. Pelzer, 536 U.S. 730, 739 (2002)). The Court "may decide these issues in either order, but[] to survive a qualified-immunity defense, the plaintiff must satisfy both showings." Gaines v. Wardynski, 871 F.3d 1203, 1208 (11th Cir. 2017) (citing Jones v. Fransen, 857 F.3d 843, 851 (11th Cir. 2017)) (alterations and quotation omitted).

The Court determined above that Defendant's conduct here establishes a claim for excessive force. See supra, at 7-14. In the Eleventh Circuit, when a Plaintiff's allegations establish an Eighth Amendment violation such as the use of excessive force,

16

qualified immunity does not attach. See Skrtich v. Thornton, 280 F.3d 1295, 1302 (11th Cir. 2002) ("Having determined that the [defendants'] alleged beating violated [plaintiff's] Eighth Amendment rights, we conclude that no qualified immunity defense was available to the [defendants]"); see also Ash v. Landrum, 819 F. App'x 770, 774 (11th Cir. 2020) ("[A]s [plaintiff's] allegations establish an Eighth Amendment violation, we conclude that the district court erred in determining that the [defendants] were entitled to qualified immunity"); Bowden v. Stokley, 576 F. App'x 951, 955 (11th Cir. 2014) ("[B]ecause a reasonable jury could find [defendants] violated [plaintiff's] Eighth Amendment rights, [defendants] are not entitled to qualified immunity . . . . [W]here the plaintiff has sufficiently alleged or shown a material dispute of fact as to an excessive force claim, summary judgment based on qualified immunity is not appropriate") (citation omitted); and Fennell, 559 F.3d at 1217 ("For claims of excessive force in violation of the Eighth . . . Amendment[] . . . a plaintiff can overcome a defense of qualified immunity by showing only the first prong, that his Eighth . . . Amendment rights have been violated . . . . We created this rule because, for an excessive-force violation of the Eighth . . . Amendment[], the subjective element required to establish [the constitutional violation] is so extreme that every conceivable set of circumstances in which this constitutional violation occurs is clearly established to be a

17

violation of the Constitution." (citations and quotations omitted)). Accordingly, Defendant is not entitled to qualified immunity.

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's motion for summary judgment (Doc. 35) is **DENIED.** The case will proceed to trial.

**ORDER ENTERED** at Augusta, Georgia, this ___ day of March, 2022.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA